GEOFFREY BECKER
BECKER & BECKER
1370 Reliez Valley Road
Lafayette, California 94549
Telephone: 925-939-9041
State Bar No. 70110

Attorney for Plaintiffs,
Christopher, Mark and Paul Williams

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christopher Williams, Mark Williams and Paul Williams<br><br>    Plaintiffs,<br><br>v.<br><br>Promedica Health System, Inc. and Manor Care of Tice Valley, LLC<br><br>    Defendants. | NO. 3:22-CV-02611 SK<br><br>Third Amended Complaint For Elder Abuse Wrongful Death and Violation of Patient's Bill of Rights |

## JURISDICTION

This case was removed to this court pursuant to 28 U.S.C. § 1332(a)(1), a district court may assert jurisdiction over a civil action between "citizens of different States." Removal was also based on federal question jurisdiction under 28 U.S.C. §§1331 and 1441(a) and (3). The court no longer has federal question jurisdiction. *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 686-689. The writ of certiorari was denied on November 21, 2022.

1

Third Amended Complaint for Elder Abuse, Violation of Patients Rights and Wrongful Death

General allegations

1. Promedica Health System, Inc. and Manor Care of Tice Valley, LLC owned or operated the residential care facility known as Manor Care of Tice Valley, LLC.

2. At all times relevant, Barbara Williams was protected by the Elder Abuse Statute, Welfare & Institutions Code Section 15600, et seq., having been born on August 8, 1947.

3. On or around May 15, 2019, Barbara Williams became a resident of the defendants' care facility located in Walnut Creek and she died on July 15, 2020 at the Kaiser Walnut Creek hospital after having been transferred from the residential care facility to Kaiser on or around June 22, 2020.

4. Mark Williams, Christopher Williams and Paul Williams are Barbara Williams' children and sole heirs and are her successors in interest. By this third amended complaint, Christopher Williams and Paul Williams are joined as plaintiffs.

First Claim for Relief

(Elder Abuse)

5. Plaintiffs reallege and incorporate by this reference all of the general allegations of this third amended complaint as though set forth fully herein.

6. On or around June 11, 2020 Jacqueline Richter, M.D., an employee of Kaiser Permanente Medical Group or an employee of a Kaiser Permanent entity (Kaiser), ordered a SARS-COV-2, NAA (COVID-19) for the purpose of testing Barbara Williams who was not symptomatic. The order states that "Specimen will be collected there and brought to lab".

7. On or around June 16, 2020, MDCOLLECT collected the specimen and it was sent to TPMG regional lab located in Berkeley, California.

8. On June 17, 2020, the test results were reported as "negative".

9. On June 21, 2020, defendants' informed plaintiff, Christopher Williams, that there had been a Covid outbreak, that infected patients had been transferred to a separate unit and that his mother was not infected.

2

Third Amended Complaint for Elder Abuse, Violation of Patients Rights and Wrongful Death

10. At all times relevant, Maggie Youssef was the administrator of the residential care facility and was in acting in a managerial capacity for the defendants.

11. On June 21, 2020, Maggie Youssef informed Christopher Williams that notwithstanding the prior representation that Barbara Williams was not infected, in fact she was.

12. Maggie Youssef ordered Barbara Williams' transfer to the Covid isolation unit at Manor Care without seeing the test results or confirming the results were positive. Plaintiffs are informed and believe and based on this information and belief aver that a nurse employed by the defendants told Maggie Youssef that Barbara Williams test results were positive and when she did, she was referring to the test results for another resident by the name of "Williams". Maggie Youssef does not recall the nurse's name and the medical records do not confirm this communication took place.

13. By reason of the care giver/resident relationship between Barbara Williams and the defendants, defendants were obligated to act in Barbara Williams' best interests and to refrain from exposing her to health and safety risks. This obligation required the defendants and Maggie Youssef to confirm that Barbara Williams was infected with the Covid 19 virus before transferring her to the Covid isolation unit. This obligation required that the director of nursing services and Maggie Youssef investigate why on June 21, 2020 Christopher Williams was told that his mother was not infected and shortly thereafter was told by Maggie Youssef that she was infected. The discrepancy in information provided to Christopher Williams, representative for Barbara Williams, was not investigated and had it been, defendants would have determined that the information originally given to Christopher Williams was correct, i.e.. his mother tested negative. Had this investigation taken place or had Maggie Youssef looked at the test results or otherwise attempted to confirm Barbara Williams was positive, she would have discovered Barbara Williams was Covid negative and would not have transferred her to the isolation unit where she was exposed to the virus.

14. At all times relevant, Rodger Hogan was the defendants' Regional Director of the residential care facility where Barbara Williams was a resident and was acting as a managing agent on behalf of the defendants. Plaintiffs are informed and believe and based on this information

3

Third Amended Complaint for Elder Abuse, Violation of Patients Rights and Wrongful Death

and belief aver that he had the authority to terminate the individuals responsible for the erroneous transfer of Barbara Williams to the Covid isolation unit, including Maggie Youssef.

15. Rodger Hogan ratified Maggie Youssef's transfer of Barbara Williams' to the Covid isolation unit by reason of the fact that he did not terminate the defendants employment relationship with her. Rodger Hogan ratified the transfer of Barbara Williams' to the Covid isolation unit by reason of the fact that he did not terminate the nurse/employee who presumably told Maggie Youssef that Barbara Williams was Covid positive.

16. The transfer to the Covid isolation unit under the circumstances was reckless and this recklessness was a substantial factor in bringing about Barbara Williams' exposure to the Covid 19 virus.

17. The claims Barbara Williams had for the reckless transfer to the Covid isolation unit are now asserted by the plaintiffs who claim the damages their mother would have been entitled to claim, including attorney's fees and punitive damages.

18. At the time of Barbara's Williams' admission to the defendants' care facility, defendants knew she suffered from seizures and that she was taking medication to prevent the seizures. From May 15, 2019 until January 3, 2020, defendants did not monitor whether the blood level of her anti-seizure medication was therapeutic. The defendants' director of nursing charged with the responsibility for assuring that the medication was therapeutic did not take any measures to confirm it was therapeutic. The director of nursing charged with the responsibility for assuring that the medication was therapeutic was the defendants' managing agent.

19. On January 4, 2020, blood was drawn to, among other things, determine whether the anti-seizure medication was at a therapeutic level. On January 5, 2020, the defendants knew from the January 4, 2020 lab results that Barbara Williams' health and safety were endangered because her seizure medication was not therapeutic. The director of nursing charged with the responsibility for assuring that the medication would rise to a therapeutic level did not take any measures to confirm whether it had. In fact, it had not. The director of nursing charged with the responsibility for assuring that the medication would attain a therapeutic level was the defendants'

managing agent.

20. On or around February 21, 2020, blood was drawn to determine whether the seizure medication had reached a therapeutic level.

21. On February 22, 2020, the lab results confirmed that the seizure medication had not reached a therapeutic level. The director of nursing charged with the responsibility for assuring that the medication was therapeutic did not take any measures to confirm it would thereafter be therapeutic. The director of nursing charged with the responsibility for assuring that the medication was therapeutic was the defendants' managing agent.

22. On or around May 28, 2020, the defendants instituted a care plan that called for, among other things, assuring the administration of Barbara Williams' seizure medications was therapeutic.

23. From May 28, 2020 until June 22, 2020, defendants did not comply with the care plan even though they knew Barbara Williams was not receiving and for months had not received any benefit from the seizure medication. The director of nursing charged with the responsibility for assuring that the medication was at a therapeutic level as required by the care plan, did not take any measures to confirm the medication had reached a therapeutic level. The director of nursing charged with the responsibility for assuring that the medication was therapeutic was the defendants' managing agent.

24. Defendants acted recklessly and with a conscious disregard for Barbara Williams' health and safety when, for months, they did not provide the medical care necessary to treat her seizure disorder knowing that without proper care and treatment, Barbara Williams would have a seizure. The aforesaid failure to provide medical care was a substantial factor in bringing about the seizure Barbara Williams suffered on or around June 22, 2020.

25. The claim Barbara Williams had for the neglect and recklessness in causing her seizure and the damage caused thereby is now asserted by the plaintiffs who claim the damages their mother would have been entitled to claim, including attorney's fees and punitive damages.

Third Amended Complaint for Elder Abuse, Violation of Patients Rights and Wrongful Death

Second Claim for Relief

(Violation of Patients' Bill of Rights)

26. Plaintiffs re-allege and incorporate by this reference, each paragraph of this third amended complaint as though set forth fully herein.

27. Defendants violated California Code of Regulations Section 72527 and Health & Safety Code Section 1430 by failing to provide Barbara Williams with the information she was required to receive regarding the therapeutic level of her seizure medication and by reason of the failure to report to her that her Covid test was negative when she was transferred to the Covid isolation unit. Further, defendants did not notify Christopher Williams, Barbara Williams' representative, that Manor Care was experiencing a Covid outbreak until June 21, 2020 when he went to visit his mother.

28. Had the defendants informed Christopher Williams that Manor Care was experiencing a Covid outbreak prior to June 21, 2020, he would have removed his mother from the defendants' care facility, provided care for her at his home and she would not have been exposed to the Covid virus at Manor Care or at Kaiser.

29. That by reason of these violations, plaintiffs are entitled to the damages provided by Health and Safety Code Section 1430, including attorney's fees and punitive damages.

Third Claim for Relief

(Wrongful Death as to all defendants)

30. Plaintiffs reallege and incorporate by this reference each paragraph of this third amended complaint as though set forth fully herein.

31. The defendants' failure to monitor the seizure medication caused the seizure requiring Barbara Williams' transfer to Kaiser. When she was transferred, defendants knew that the Covid outbreak it was experiencing was the result of a Covid positive Kaiser patient. Defendants knew that one of it residents had been a patient at Kaiser Walnut Creek and returned to Manor Care infected by the virus. Defendants knew that this resident caused or contributed to the Covid outbreak

at Manor Care.

32. When the defendants transferred Barbara Williams to the Manor Care Covid isolation unit on or around June 21, 2020, she was Covid negative.

33. When the defendants ransferred Barbara Williams to Kaiser on June 22, 2020, she was Covid negative according to the tests performed on June 16 and 22, 2020.  On June 26, 2020, Barbara Williams tested positive while at Kaiser and died from the virus on July 15, 2020.

34. The failure to monitor the seizure medication, the transfer to the Covid isolation unit where Barbara Williams was exposed to the virus, the transfer to Kaiser were substantial factors in bringing about Barbara Williams' death.

35. The aforesaid failure to notify Christopher Williams that there was a Covid outbreak was a substantial factor in bringing about his mother's death.  Had the defendants notified Christopher Williams about the outbreak when it occurred, he would have taken his mother to his home and cared for her.  At the time Christopher Williams would have taken his mother to his home, his mother was not infected with the Covid 19 virus.  His mother died from the Covid virus after being exposed to it in the Manor Care Covid isolation unit.

36. Plaintiffs have been damaged in that they have lost the love and affection their mother provided them.

Pursuant to Civil Code §3291, plaintiff requests interest on the judgment.

WHEREFORE, plaintiff prays for judgment and damages as follows:

a. For the damages Barbara Williams would have been entitled to recover on account of the elder abuse she suffered as alleged in the first claim for relief including attorney's fees and punitive damages according to proof;

b. For $500.00 in the second claim for relief, attorney's fees and punitive damages.

///

///

///

7

Third Amended Complaint for Elder Abuse, Violation of Patients Rights and Wrongful Death

   c. For wrongful death damages in the third claim for relief as alleged therein;

   d. For such other relief as the court deems proper.

Dated:  December 29, 2022

            "s"/ geoffrey becker
            Geoffrey Becker

---

8

Third Amended Complaint for Elder Abuse, Violation of Patients Rights and Wrongful Death